## COOPER v. FREDERICK.

1. A resolution by the Directors of a Rail Road Company, that the stockholders might relinquish one half of their stock, and the payments previously made accounted for as if made on the stock retained, provided the stockholders paid all the calls subsequently made by the dicrectory, is in

Cooper v. Frederick.

the nature of a contract, entered into between the corporation and its members, and is not on its face illegal or improper.

2. If a judgment can be had against a stockholder, for a debt due by the corporation, under the act of 31st December, 1841, the affidavit required by that act must be made previous to suing out garnishee process. Whether the act applies to the stockholders of a corporation whose franchise has been lost by *non user*, or dissolved by any act equivalent to a surrender of its privileges, *quere?*

Error to Dallas Circuit Court.

THE plaintiff in error, as surviving partner, having recovered a judgment against the Selma and Tennessee Rail Road Co. for $3,398 73, and having made the necessary affidavit, sued out garnishee process against the defendant in error, who being duly summoned, appeared and answered, " that he is, and has been, since January, 1837, a member of said company, having taken twenty shares of $100 each ; by the articles subscribed, he bound himself to pay the sum annexed to his name towards the capital stock, in conformity with the provisions of the charter, passed 22d December, 1836, one provision of which is, that the subscription for said stock shall be paid, &c. reciting the third section.

On the 24th June, 1839, the Directors, taking into consideration the embarrassed condition of the country, and as the stockholders, at their annual meeting, in March, 1839, had referred to the Board of Directors the consideration of this matter, " Resolved, that all those who took stock prior to the first of May, 1837, be authorized to surrender one half of, or as much less as they may see proper, and the instalments paid heretofore by said persons, shall be accounted, if it had been made on the amount so retained, and credited to them accordingly. Provided, that if any such person shall omit to pay such instalment as may be next called for, on the amount retained, shall be considered as waiving the same, and bound for the amount originally taken." This resolution was ratified at a subsequent meeting of the stockholders."

HARVARD LAW SCHOOL LIBRARY

The garnishee availed himself of the provisions of the resolution, and on the 7th March, 1840, relinquished ten shares, and has fully complied with all the stipulations of the resolution, and has from time to time paid all the calls which have been made by said company, amounting in all to 23 per cent. on the stock retained.

At, and previous to, the passage of the resolution of March, 1839, the plaintiff in error, and his brother David, since deceased, were partners, and as such, subscribed in, and were members of said corporation : and affiant believes, that David Cooper, while such partner, and a corporator, assented to such resolution, and was present at said meeting of stockholders, at which the resolution was approved, and did not dissent. The garnishee concludes his answer, by denying that he owes any thing to the Rail Road Company.

Upon this answer, the court discharged the garnishee, and rendered a judgment in his favor for the costs.

This is now assigned as error.

G. W. GAYLE, for the plaintiff in error. The corporation had no power under their charter, to pass the resolution under which the surrender was made. No such power is expressly given, nor is it incidental to any power granted. [1 Stew. 199; 5 Porter 279; 6 Ala. 741.] The number of shares into which the stock of the company is divided, cannot be reduced by it, as the capital stock is to be regarded as a fund for the payment of corporate debts. [Ang. & A. on C. 89, 475, 478; 6 Pick. 23.] So debts are frequently contracted with a corporator, on the credit of his dividends, and to allow it to be reduced, would be a fraud upon such creditor. [Ang. & A. 438.]

This resolution cannot be supported as a by-law, because it has no tendency to forward the purpose for which the company was created. [A. & A. 268.] Corporators are only liable to the amount of their stock. Now, if the corporation has the power contended for, debts can never be collected of them, as they have nothing to do but to assemble, pass a resolution, and relinquish their stock.

The assent, or dissent, of D. Cooper, amounts to nothing.

His assent could not give validity to a void act of the corpo-
ration.

His assent could not bind his copartner. The interest of
the firm in the corporation, and their interest as partners in
excavating the road, were separate and distinct. Such an
assent does not come within the scope of the partnership.

The relinquishment being void, the garnishee is now lia-
ble to pay 23 per cent. on the shares so relinquished, that
being the sum which the company has called for.

R. Saffold, contra. The opinion prevailed generally, if not
universally, in the community, that the subscribers to this, and
similar stock, had the right to relinquish their stock, by a forfeit-
ure, and thus exonerate themselves from further liability.
This led to the resolution, and acting upon it, those who sur-
rendered have paid all the subsequent calls of the company. It
must therefore be regarded as a contract entered into between
the company and the individual corporators. It was in fact
an honest compromise, entered into from pure motives, to
prevent the dissolution of the company, as is fully shown by
the reasons set forth by the directors for its adoption.

The regulation is in the nature of a by-law, having also
the assent of the stockholders. As such, the State not com-
plaining, it is clearly valid. [A. & A. on Cor. 298, 302 ; 2
Stew. 401; 6 Ala. 741.]

ORMOND, J.—The only question presented upon the re-
cord, is the validity of the resolution of the board of direc-
tors, authorizing the members of the company to relinquish
a portion of their stock, on condition of paying all the calls the
company might subsequently make upon the residue.

Considering this resolution in itself, we entertain no doubt
whatever, that it was such an act as the company might law-
fully do. It is a contract entered into by the corporation,
with its members, which does not carry on its face any marks
of illegality, or impropriety. It may have been, and proba-
bly was, eminently judicious and proper. It appears that
when it was adopted, the company was struggling with dif-
ficulties, in consequence of the great pressure upon the com-

munity for money, and it was apprehended that many of the subscribers would not pay, but would forfeit their stock. To prevent this, and to enable the company to go on, was the avowed, and doubtless the real motive, for the proposition; which originated with the directory, and was afterwards sanctioned by the stockholders.

The argument principally urged, does not deny the right of the company under any circumstances, to pass such a resolution, but that the stock is the fund for the payment of the debts of the corporation. and the relinquishment a fraud upon the creditors of the corporation. We need not inquire what would be the effect of the facts supposed, as it does not appear that by the reduction of the stock, the rights of creditors were at all affected. As to this particular debt, it is not shown when it was created, whether before or after the passage of this resolution. Conceding that the stockholders would be individually responsible to the creditors of the corporation, in proportion to their stock, as appears to have been held in Wood v. Dummer, 3 Mason C. C. 308, it could only be by a proceeding in equity, no such liability exists at law, [Vose v. Grant, 15 Mass. 506,) even after the corporation is extinct.

This was a proceeding under our general law of garnishment, as appears from the affidavit made, to obtain the garnishee process, in which it is stated that the garnishee and others, are indebted to the said defendant, or have effects of the said defendant in their hands, he therefore prays that they be summoned, &c.

The defendant in error, by his answer, denies any indebtedness. He admits he subscribed originally for twenty shares of stock, ten of which he relinquished to the company, under the order of the board previously spoken of, and has paid all the calls of the company on the remaining ten. This is a denial of indebtedness to the corporation. Such indebtedness did not arise under the charter, from the fact of his being a subscriber, but upon his refusing to meet the calls of the company. [Bingham v. Rushing, 5 Ala. 403.] See the third section of the charter, providing for the mode and manner of making calls, for the amount subscribed.

By the act of December 31, 1841, [Sess. Acts, 15,] it is pro-

vided, that "the stockholders of any incorporate company, or body corporate, shall be liable respectively to the creditors of such company, for the amount of stock subscribed by them, and unpaid, in character of debtors to such corporation, and such liability may be enforced by garnishment, as above provided for in this bill." The affidavit which by this act is required to be made is, "that certain persons, (naming them,) are indebted to such company as stockholders, or otherwise," and the garnishee is required to answer, what he is indebted, "as stockholder, or otherwise." The design of this act appears to have been, to reach the stockholder as a debtor of the corporation, through his stock, and without 'any call of the company. Under this act, then, it would seem, (if the enactment itself is of constitutional validity,) that a judgment should have been rendered against the garnishee, for the amount of the ten shares unpaid, which he admitted he held in the company. But as already observed, the garnishment was not sued out upon this statute, but under the general law of garnishment, and the necessary affidavit not being made, the court had not jurisdiction to render a judgment for the amount due from the stockholder to the corporation, upon which no call had been made.

The 4th section of the charter, authorizes the company to organize, when $500,000 is subscribed, what effect the resolution of the board heretofore spoken of, had upon the franchise, or whether it reduced the stock below the amount necessary to the corporate existence of the company, the record affords no information. Whether the act of 1841 applies to the stockholders of a corporation, whose franchise has been lost by *non user*, or has been dissolved by any act equivalent to a surrender of its privileges, is one of very great moment, and upon which it is improper that we should express an opinion.

Let the judgment be affirmed.