11 ALa. (N.S.) 472

## PASCHALL v. WHITSETT.

1. It seems that a statute which merely gives a remedy at law, where it could previously have been available in equity only, or *vice versa*, may consistently with the constitution operate retrospectively; but whether the act of 1841, which gives the remedy by garnishment to the creditor of a corporation against a stockholder, where the latter stipulates to pay his subscription for stock as calls are made for it, entitles the creditor to garnishee the stockholder for what is due for the unpaid stock where he has paid all the calls of the company, is an open question.

2. A corporation is subject to dissolution by a surrender of its corporate franchises, and by a forfeiture of them for wilful misuser and non-user;

and a stockholder of a corporation is not liable to the process of garnishment under the act of 1841, at the suit of its creditor after the dissolution of the corporate body.

3. The answer of a garnishee, that he had been informed and believed the corporation ceased to have "any legal existence" previous to the issuing of the garnishment, is equivalent to the assertion that it was dissolved; and if not negatived in the manner prescribed by the statute, will be taken to be true.

Writ of Error from the Circuit Court of Sumter.

The plaintiff in error having recovered a judgment against the Gainesville and Narkeetah Rail Road Company, a corporation, made the affidavit required by the statute, and caused the defendant to be summoned as a garnishee.   To the garnishment the defendant answered, denying an indebtedness to the corporation, or that he had any of its effects in his hands, and that he had no knowledge or belief of any one else who had any of its effects or was indebted to it.   In answer to interrogatories, garnishee answered that in July, 1836, he subscribed for fifty shares in the company, rated at one hundred dollars each; and before the garnishment issued, he paid and advanced to and for the company more than the amount of all assessments made on his stock:   That the subscription was not made by a writing under seal, but merely by signing his name for the shares stated, and that more than six years had elapsed after his subscription before the garnishment issued in this suit; consequently, he insists upon the benefit of the statute of limitations.   Garnishee further answers, that the company previous to the issuing of the garnishment ceased to have any legal existence, as he is informed and believes.   Upon this answer the garnishee was discharged, and a judgment rendered against the plaintiff for costs; which costs were remitted.

Reavis, for the plaintiff in error, insisted that the act of 1841, (Clay's Dig. 260, § 8, 9, 10,) gave a remedy against a stockholder, by garnishment at the suit of a creditor of the

60

corporation co-extensive with that previously afforded by a court of equity. [See also Story's Eq. § 1252; act of 1835 –6, incorporating the Gainesville and Narkeetah Rail Road Company.] The statute of limitations will not avail the stockholder in such a case. [Ball. on Lim. 371-2-3.] But, if it would, the statute had not completed a bar when the act of 1841 was passed, and the ninth section of this act creates a direct liability against the stockholder in favor of the creditor—thus arresting the progress of the statute.

The subscription for stock made the defendant liable under the charter to pay it all at once, and an action was maintainable immediately upon the refusal of the subscriber to pay. Any other remedy provided by the charter was merely cumulative. [3 Ala. Rep. 660; 5 Id. 787.] To entitle the creditor to proceed by garnishment against a stockholder who had failed to pay for his stock, it is not necessary that the corporation should have made assessments which he has failed to pay. Such might be the law independent of the act of 1841; but since its passage, a requisition by the company is immaterial. [See 5 Ala. Rep. 403.]

The general denial of indebtedness by the answer is contradicted by the facts specially stated. It is the necessary inference from these, that the garnishee was a debtor for stock in a sum equal to the plaintiff's judgment, which, including costs, was only about two hundred dollars. The dissolution of the corporation cannot prejudice the rights of its creditors. [Story's Eq. § 1252]; and if upon the record the circuit court should have rendered a judgment against the garnishee, this court will now do it.

J. BLISS and BALDWIN, for the defendant in error, contended that the proceeding by garnishment was a legal remedy, (5 Ala. Rep. 442,) and the act of 1841 only gives to the creditor of the corporation the benefit of this remedy, but does not make the stockholder or other person a debtor who was not previously such. Here the answer not only denies an indebtedness, but states facts which sustain the denial, and does not warrant a judgment against the garnishee. [1 Smede & M. Rep. 541; 2 Stewt. Rep. 86; 3 Port. R. 105; 6 Id. 365; 3 Ala. Rep. 312.] If there was no cause of ac-

tion at the suit of the company, certainly its creditor is in no better condition, and cannot recover. [6 Port. Rep. 365; 5 Ala. Rep. 403; 6 Mass. Rep. 60.] If the assessments were paid, the last citation shows there was no indebtedness, and the garnishee may insist upon his advances for the company as a set off, (1 Stewt. Rep. 9; 6 Ala. Rep. 818,) or the statute of limitations as a bar. [9 Pick. Rep. 144.]

Between the subscriber for stock and a creditor of the corporation, the relation of trustee and *cestui que trust* does not exist; whether the corporation does not hold the money after the stock has been paid for, in trust for creditors, is a very different question, which it is not necessary to consider. The creditors of a partnership have a lien upon the effects of the concern paramount to the claims of individual partners, yet this will not prevent the debtors of the partnership from availing themselves of the statute of limitations against the creditors. [Story's Eq. § 1253.] A creditor who proceeds by garnishment, may be met by every defence which could have been urged by the garnishee had he been sued by the person with whom he contracted.

If, as argued for the plaintiff, that the defendant was suable upon his subscription without a requisition having been first made by the company for its payment; this argument is conclusive to show, that there was no trust against which the statute of limitations would not run. [5 Johns. Rep. 90; 3 Ala. Rep. 756.] As to the effect of an assignment in bankruptcy, or of a trust in a will of personalty for the payment of debts to arrest the statute of limitations, see Chitty on Con. 6th ed. 828; 15 Ves. Rep. 479; 14 Cond. Eng. Ch. Rep. 500; 17 Id. 57; 17 Ves. Rep. 87.

The act of 1841 does not arrest the progress of the statute of limitations, or in any manner interfere with it—its purpose, as we have seen, was merely to extend a remedy which was previously applicable in many cases.

The act incorporating the Gainesville and Narkeetah Rail Road Company, is unlike the statute which was brought to the view of the court in 3 Ala. Rep. 660, and similar to that considered in 5 Ala. Rep. 403. The ground on which the garnishee was entitled to his discharge is inherent in the contract, and though it is competent for the legislature to vary

the remedy, they cannot, nor have they attempted by the act of 1841 to modify the contract. [13 Mass. Rep. 1; 15 Id. 447; 6 Pick. Rep. 451; 12 Id. 572; 3 Mason's Rep. 88; 1 Minor's Rep. 200; 2 Stewt. Rep. 228; 5 Stewt. & P. Rep. 276.] If the answer admits an indebtedness, it is for no definite amount, and no judgment can be rendered against the garnishee. [1 Stewt. Rep. 9.]

COLLIER, C. J.—The act of January, 1836, "to incorporate the Gainesville and Narkeetah Rail Road Company," directed the commissioners designated therein to open books of subscription for stock, &c. and among other powers conferred upon the president and directors, authorized them to "require such instalments to be paid upon the stock, and at such times as they may [might] think best for the interests the said company." *Further*, if any stockholder failed to pay the amount due upon his stock in pursuance of such call, the president and directors were authorized to sell his shares or such part thereof as they might think best, to the highest bidder; and if these shares should sell for less than their par value, the stockholder is made liable to pay the deficiency. Upon the failure of a stockholder to pay the amount of a call made upon his stock, or upon a deficiency after a sale of his shares, the president and directors having first given notice to him, &c. might recover the amount called for, or the deficiency, by motion for judgment, either in the county or circuit court of the county, in which the stockholder resides.

By the act of 1841, the plaintiff in a judgment against a corporation "is entitled to the rights and benefits of all the laws now in force regulating the issuance of writs of garnishment," &c.; and upon an affidavit being made as directed, a garnishment is required to issue, summoning the "garnishee to answer what he is indebted as stockholder or otherwise," &c. *Further*, the stockholders of any incorporated company "shall be liable, respectively, to the creditors of such company, for the amount of stock subscribed by them, and unpaid, in character of debtors to such corporation, and such liability may be enforced by garnishment, as above provided for." *Again:* "The stockholder of any company compelled to

pay the whole or any part of the debts of the company of which he is a member, shall have the right to, and be deemed an assignee of the judgment, or so much thereof as shall have been paid by him, and shall be entitled to the remedy provided by law, for co-securities, to compel contribution from the other stockholders, or any of them." [Clay's Dig. 260, 261, § 8, 9, 10.]

The act incorporating the Gainesville and Narkeetah Rail Road Company, does not impose upon the subscriber for stock an immediate and absolute liability to pay the full amount of his subscription; but it contemplates a payment by instalments upon the requisition of the president and directors. In the language of this court in Bingham v. Rushing, (5 Ala. Rep. 403,) "It is therefore perfectly obvious, that until such call was made, there was no such indebtedness on the part of the stockholder as would authorize the corporation to maintain an action against him, either by the common law, or by the summary remedy given by the statute, (acts 1818–1823)—and if the corporation could not maintain the action because there was no indebtedness, it is clear the proceeding by garnishment cannot be maintained," unless it is given by the act of 1841. In Cooper v. Frederick, 9 Ala. Rep. 738, it is said the design of this act appears to have been to reach the stockholder as a debtor to the corporation, through his stock, and without any call of the company." If the enactment is constitutional, the court say that a judgment could be rendered against a stockholder when summoned as a garnishee, though he was not in default for calls made upon his stock by the directory.

It may perhaps be regarded as a settled principle, that the capital stock of a corporation is a trust fund for the payment of its debts, and a stockholder is not entitled to any dividend or share of its capital, until all the debts are paid. And if the stock should be distributed before the debts are paid, each stockholder receiving his share would be compelled to contribute *pro rata* to the payment of such debts, from the funds in his hands. But this is a remedy which can only be obtained in equity, where all the proper parties may be brought before the court, and the full amount of the debts, the mode of contribution, the number of the contributors, or

the cross equities and liabilities, which may be required for a proper adjustment of the rights of all parties, as well as of the creditors, ascertained. [2 Story's Eq. § 1252.] Whether this principle applies to stockholders whose shares have not been paid or called for, we will not now stop to inquire.

In respect to the constitutionality of the act of 1841, several questions suggest themselves: 1. Did the subscription for stock, under the terms of the charter, impose a present liability upon the stockholder, or does not the times of payment and amount of instalments depend upon the requisition of the directory? Does not the charter require that the assessments upon each share should be equal, and if one stockholder should, by process of garnishment, be compelled to pay for all his stock, would not the requisition operate unequally, and practically modify the contract, which the subscription and charter evidences? We do not propose to answer these questions at this time. It may be conceded, that a statute which merely gives a remedy at law, where it could previously have been made available in equity only, or *vice versa*, may consistently with the constitution operate retrospectively, so as to embrace contracts already made. Perhaps, if the president and directors of a corporation under a charter such as that before us, failed to call for instalments as their duty required, a court of equity might be resorted to, by a creditor, and upon the stockholders being brought before the court, an assessment could be made upon each one of them agreeably to the spirit of their subscription and the charter.

At common law, upon the dissolution or civil death of a corporation, all its real estate remaining unsold reverts back to the original grantor, or his heirs, for the law annexes a condition to every gift or grant, that if such body politic be dissolved, the donor or grantor shall not re-enter. The personal estate vests in the king; in this country in the people, or State, as succeeding to this right and prerogative of the crown. The debts due to and from the corporation are totally extinguished; so that neither the members nor directors of the corporation can recover, or be charged with them in their natural capacities; according to the civil law maxim, *si quid universitati debetur, singulis non debetur; nec quod debit universitas, singuli debent.* [Ang. & A. on

Corp. 128-9, 667.] In Mumma v. The Potomac Company, 8 Pet. Rep. 281, it was said, that a corporation, by the very terms and nature of its political existence, is subject to dissolution, by a surrender of its corporate franchise, and by a forfeiture of them for wilful misuser and nonuser. Every one must be presumed to understand the nature and incidents of such a body politic, and to contract with reference to them. And it would be a doctrine new in the law, that the existence of a private contract of the corporation, should force upon it a perpetuity of existence, contrary to public policy, and the nature and objects of its charter: *Further*, that a *scire facias* to revive a judgment cannot be maintained against a dead corporation any more than against a dead man. [See 1 Bla.. Com. 485; 3 Step. Com. 187.]

The act of 1841, requires the debtor of the company to state what he is indebted to it, *as stockholder, or otherwise.* Its terms, as well as the character of the proceeding, suppose that there is a subsisting indebtedness, though it may not have matured, or the contract out of which it arises may not be absolute. A corporation is an artificial body, depending for its existence upon a legislative act, to which it either mediately or immediately owes its vitality. It may exist *ad infinitum*, or its being may be limited, and although there may be no limitation, expressly prescribed, it is subject to dissolution and civil death in various ways. But for whatever cause it may become defunct, we have seen that the " debts due to and from it are totally *extinguished* ;" and in no just sense can one be said to be its debtor, either as a stockholder or otherwise. A corporation, after dissolution for all legal purposes, is a nonentity, incapable of suing and being sued, and a judgment which assumes that a garnishee is its debtor, is untrue in point of fact, as well as law. Whether the creditors have a remedy in equity against the real and personal estate, or the debts which were due to a corporation that is civilly dead, we need not inquire ; for however this may be, it is certain that there is no right to proceed by garnishment under the statute.

It has been repeatedly decided by us, that the answer of a garnishee, if not controverted, will be taken to be true. We

must then understand in the present case, that the affirmation in the answer, that the garnishee was informed and believed, that the corporation ceased to have "any legal existence," previous to the issuing of the garnishment, is equivalent to an assertion that it was dissolved; and that the fact of dissolution is conceded—leaving its effect only to be decided by the court. By this we have seen, its debts, and of consequence the legal remedies for their collection are extinguished. This view is decisive of the cause, and relieves us from considering the other questions made at the argument. The judgment of the circuit court is therefore affirmed.