| 29 | 573 |
| 96 | 248 |
| 29 | 573 |
| 98 | 56 |
| 29 | 573 |
| 102 | 603 |
| 29 | 573 |
| 120 | 634 |

# MOBILE & OHIO RAILROAD CO. *vs.* THE STATE.

[BILL IN EQUITY BY RAILROAD COMPANY TO ENJOIN SALE OF MORTGAGE BONDS.]

1. *Repugnant statutes of same session.*—It is competent for the legislature, by a subsequent statute, to modify or repeal a previous act of the same session : the legislative rules, as to the entertainment of propositions to alter or repeal acts or resolutions during the session of their adoption, do not invalidate such subsequent statute.

2. *General and special statutes.*—The principle is admitted, that a special act is not modified or controlled by a subsequent general act on the same subject, unless the latter clearly manifests on its face such an intention.

3. *Statute partly unconstitutional.*—An unconstitutional provision in a statute does not affect the validity of other provisions which may be maintained separate and apart from it ; but the courts will strike out the former, and give effect to the latter.

4. *Statute usurping judicial power.*—Whether the legislature may, by statute, declare a forfeiture of the charter of an incorporated company without any judicial proceeding, was made a question in this case; but the court waived the consideration of the question as unnecessary, and only cited the authorities.

5. *Forfeiture of charter of incorporated company.*—An incorporated company may

consent to a forfeiture of its charter, though such consent, *it seems,* can only be given by all the stockholders ; and a statute which declares a forfeiture, with the consent of the company, does not impair the obligation of contracts.

6. *Construction of acts of* 1856, *"for further security and protection of the State in railroad loans," and " to renew the loan to the Mobile and Ohio Railroad Co."*—The act of February 14, 1856, "for the further security and protection of the State in railroad loans," (Session Acts 1855–6, p. 3,) applies to the extension of the loan to the Mobile and Ohio Railroad Company under the previous act of January 12, 1856, (*Ib.* 10). The provision of said act which requires a railroad company, applying for a loan or extension of a debt, to consent to a forfeiture of its charter in the event of its failure to make payment according to the terms of its loan, is independent of the other provisions, which require its consent to a declaration of a forfeiture of its charter by the legislature, and that the forfeiture so declared shall be complete and effectual for all purposes whatever without any judicial proceeding ; is not obnoxious to the constitutional objections, that it requires the company to consent to the exercise of judicial power by the legislature, and impairs the obligation of contracts ; and must be complied with by any railroad company applying for a loan or extension of a debt, however difficult such compliance may be.

APPEAL from the Chancery Court at Mobile.
Heard before the Hon. WADE KEYES.

THE material facts shown by the record are these :—

Under the act of February 17, 1854, " to aid the Mobile and Ohio Railroad Company," (Session Acts 1853–4, p. 36,) a loan of $400,000 was made by the State of Alabama to said railroad company, to be repaid in two years ; and the repayment of this loan was secured by a mortgage on bonds of the company, to the amount of $600,000, conferring a power of sale, in the event of a failure to repay at maturity, on the comptroller and treasurer of the State.

On the 12th January, 1856, an act was passed by the legislature to renew this loan, (Session Acts 1855–6, p. 10,) which act is as follows :—

" SECTION 1. *Be it enacted,"* &c., " that the governor is hereby authorized and directed to renew the loan made to the Mobile and Ohio Railroad Company, as authorized by act of the general assembly approved on the 17th day of February, 1854, for two years from the maturity of the bonds and other securities now held by the State, at the same rate now paid by said company.

" SECTION 2. *Be it further enacted,* that for the renewal of

said loan, the governor of the State is hereby authorized to receive the first mortgage bonds of said company, or such personal securities, or both, as heretofore required, as satisfactory to him, for the payment of the principal and interest of said loan ; *provided*, that the debt shall not be extended, unless the governor is satisfied that the debt is made perfectly safe to the State ; and *provided further*, that the governor be directed to require, not only the first mortgage bonds to at least the amount of the loan, but also such personal security as he shall deem satisfactory; said personal security not to be less than fifty per cent. of the amount of the loan."

On the 14th February, 1856, an act was passed by the same legislature, entitled " An act for the further security and protection of the State in railroad loans," (Session Acts 1855–6, p. 3,) which is in these words :

" SECTION 1. *Be it enacted*," &c., " that if any railroad company, to whom any sum has or may be loaned, or proposed to be loaned, by any act of the general assembly of this State, whether the same be received in gold or silver, the notes of the State Bank and branches, the notes of any other bank or fund, securities or credits, shall fail or refuse promptly and in good faith to make payment, at the time, and in the manner stipulated, the charter of such company shall be forfeited upon such default of payment, and the general assembly may declare it forfeited ; and any forfeiture so declared shall be complete and effectual for all purposes, without any judicial proceeding for that purpose.

" SECTION 2. *Be it further enacted*, that upon the application of any company for any loan so made or proposed to be made, or for the extension of any loan heretofore or hereafter made and received, said company shall, before receiving any sum, whether in gold or silver, the notes of the Bank of the State of Alabama or any of its branches, the notes of any other bank, or other funds, securities or credits, or before extending any loan by virtue of the provisions of the act under which application is made for loan or extension, file with the governor the consent to, and acceptance of the company so applying, properly authenticated, of the terms and conditions of this act.

" SECTION 3. *Be it further enacted*, that the filing with the governor, by the president of any such company, the resolu-

tions of a convention of the stockholders of said company, duly attested by the president and secretary of the board of directors of said company, consenting to and accepting the terms and conditions of this act, shall be deemed and held a compliance with the preceding section, and conclusive evidence against said company of its consent and acceptance of, and likewise conclusive evidence in favor of said company for the action of the governor."

In May, 1856, after the expiration of two years from the date of the original loan, the comptroller and treasurer, under the power of sale in the mortgage, advertised said mortgage bonds for sale ; and thereupon the railroad company filed its bill against them, the governor and the State, to enjoin further proceedings under the mortgage, and obtained an injunction pending the suit. The bill alleged, that the complainant had applied to the governor for an extension of its loan, and had offered to comply with all the requirements of the act of 12th January ; that the governor refused the application, and required a full compliance with all the requisitions of the act of 14th February ; and that this last act is unconstitutional, impossible of performance, and inapplicable to the complainant. The other material allegations of the bill will be readily understood from the briefs and opinion. The chancellor dissolved the injunction, on the ground that the bill contained no equity, because it did not allege that, in making its application to the governor for an extension of its loan, the railroad company offered to comply with the requisitions of the above-cited act of February 14, 1856 ; and from the order dissolving the injunction this appeal is taken.

RobeRT H. Smith, for appellant.—The act of February 14, 1856, does not apply to the extension of the loan to appellant, which was authorized by the previous act of January 12. The two acts being passed at the same session of the legislature, the latter cannot alter or repeal the former.— Dwarris on Statutes, 673. Moreover, the act of 12th January is a special act, applicable to a particular company, and prescribing particular terms ; and the rule is settled, that though general words may be qualified by subsequent clauses in the same statute, a thing given in particular shall not be tolled

by general words.—Dwarris, 765 ; 23 English Law and Eq.
R. 389 ; 4 Ark. 416 ; 21 Penn. St. (9 Harr.) 37, 43 ; Angell
& Ames, 871.   To say that these statutes are to be construed
*in pari materia*, as one act, is no answer to this position ; for,
when thus construed, the difficulty remains—the particular
conflict with the general provisions ; and the same principle
applies as a rule of construction.

2. An analysis of the act of 14th February will show that
it cannot include the appellant's application for an extension
of its loan.   The first section is the enacting clause ; the
others are qualifications merely, or limitations of the first,
and do not enlarge the class of cases provided for by the first.
The first section applies, 1st, to loans made and running, and
in respect to which no renewals are proposed ; 2d, to any
railroad company to whom any sum "may be loaned" ; and,
3d, to any company to whom any sum may be "proposed to
be loaned."   Neither of these classes includes a loan which
had been made, and proposed to be extended, before the act
was passed.   It will not be asserted that the extension had
already been made, therefore the appellant's case does not
come within the first class ; and an extension proposed is
neither a loan made, nor a loan that may be made.   "May
be loaned" does not mean "may be extended."—18 Ala. 42 ;
23 Ala. 797.   A thing which has been proposed, but which
has not been perfected, is neither a thing to be proposed, nor
a thing already accomplished ; it falls within neither class,
but lies between the two.   The language of the other clauses
of the act, if they either could enlarge the meaning of the
first, or stood alone, might include this application ; but they
are limited in their operation by the first section.

3. But admitting that the act of 14th February was intend-
ed to apply to the appellant's case, it is obnoxious to greater
objections than those already specified : it violates at least
two provisions of the constitution.   The first is, that it attempts
to confer judicial functions on the legislature.   The powers
of the government are, by the constitution, distributed among
three distinct departments, each of which is confided to a
separate body of magistracy : those which are legislative to
one, those which are executive to another, and those which
are judicial to another.   A judicial power cannot be legisla-

tive, nor *vice versa ;* nor can it be partly one and partly the other, since the constitution separates them. The determination of the question whether or not a debt has been paid, what are the defenses to it, &c., is a judicial power. The determining that a corporation has ceased to exist by a forfeiture of its charter, is a judicial, and not a legislative power, as is shown by the fact that *quo warranto* lies to declare charters forfeited.—Duke v. Cahaba Navigation Company, 16 Ala. 374 ; Selma & Tennessee Railroad Company v. Tipton, 5 Ala. 807 ; 9 B. Monroe, 470 ; Angell & Ames on Corporations, §§ 774, 777, note. Admitting that the corporation might consent to such a declaration of the forfeiture of its charter, yet its consent cannot affect the validity of the law. A statute is the creature of the legislature alone, and binding *proprio vigore :* it needs no consideration, or other elements of a contract. But a corporation has not the power to consent to such a declaration of the forfeiture of its charter, as shown by the authorities herein below cited.

4. The bill alleges, and the answers admit, that other States have granted charters to said railroad company ; that debts have been contracted by the company, extending beyond the period for the extension of the loan ; and that other States, as well as individuals, are interested in these debts—that is, have vested rights in them. To allow the legislature of this State to destroy these vested rights, by a law enacted after their creation, without a trial by jury, without affording the party an opportunity to be heard in court, and without a judgment of court, would be a palpable violation of the constitution ; yet such is the effect of declaring a corporate charter forfeited.—Paschall v. Whitsett, 11 Ala. 472 ; Angell & Ames on Corporations, § 779 ; Smith's Commentaries on Statutes, 500, 505, 534, 549, 551. Nor can the corporation consent to such a forfeiture. A corporation has no powers except such as are granted by its charter, and such as are essential to the performance of some given power : neither the stockholders, as a body, nor the directors, acting for the corporation, can exercise a power not given. The object and powers of this railroad company are, to construct its road, and to preserve the vested rights of stockholders and creditors ; but it has no power, as a corporate body, to assent to

any proposition that will have the effect of destroying, contrary to the charter, the vested rights of creditors, created under corporate authority.—28 English Ch. R. 379. No agreement between the State and a debtor can destroy the vested rights of that debtor's creditors. A surrender, and a forfeiture of a charter, are different, and have not the same effect. A surrender does not destroy the rights of third persons ; and on a proposition to surrender a court of equity may enjoin.—28 English Ch. R. 370 ; Angell & Ames, §§ 772–3. The right of repeal applicable to municipal corporations by the general law, in respect to which, all contracts with it are entered into, and the right of repeal of a private corporation reserved in the charter, must not be confounded with this question.—Angell & Ames, § 870.

5. It was not for the complainant to offer specific terms of extension. It was for the governor to dictate the terms. The company could only offer a general compliance with such conditions as he might require under the law. He required a literal compliance with every requisition of the act of 14th February ; and if any part of that act is unconstitutional, complainant is entitled to relief in equity, since a party cannot be required to violate the constitution in order to obtain a right.

6. That an injunction is the proper remedy, see 9 Wheaton, 738 ; Story's Equity Pleadings, § 222 ; Cooper's Eq. Pl. 17, 22 ; Mitford, 21, 22, note.

7. On the right to sue in chancery when the State is interested, see Code, § 20 ; 1 Barb. Ch. R. 163 ; 9 Howard's (U. S.) R. 333.

JOHN A. ELMORE, with whom was M. A. BALDWIN, Attorney-General for the State, *contra.*—The bill prays an injunction on three grounds : 1st, that the company accepted the terms imposed by the act of 12th Jan., and offered to the governor a full compliance with its provisions ; 2d, that the act of 14th Feb. was impossible of performance, because the stockholders of the company were numerous, and there was not time to obtain a convention of them ; and 3d, that the first section of said act is unconstitutional and void.

1. The answer to the first ground is, that the averment of

acceptance is general and indefinite, specifying none of the facts which show an acceptance or offer of compliance ; and it is therefore but the conclusion of the pleader, and not the allegation of a fact. It is not averred when this acceptance was made by the company ; and since the pleading must be construed most strongly against the pleader, it must be presumed that the acceptance was not made until after the passage of the act of 14th February. Besides, the answer avers that the only acceptance and offer ever made were in March.

2. As to the impossibility of performance : The bill was filed in June—more than three months after the passage of the act of 14th February ; and shows on its face that, up to the 1st May, no action was taken by the trustees ; while the answer alleges, that a meeting of the stockholders of the company was held on the 25th February, which was eleven days after the passage of the act. The requirements of the act are not, in themselves, and from their very nature, impossible to be performed ; and if possible by human means, the difficulty of performance is no obstacle. But, even if impossible, they are a condition precedent, of which a strict performance is always required.—2 Bacon's Abr. 304 ; 6 Petersdorff's Abr. 44 ; 5 Viner, 111 ; Comyn's Digest, " condition," D ; 2 Bla. Com. 156 ; 19 Johns. 69 ; 12 Wend. 590 ; 1 Kernan's R. 25 ; 2 Story's Equity, § 1306.

3. The constitutionality and validity of the act of 14th February are attacked on several grounds, none of which are tenable. If the terms of the act had been accepted by the corporation, it would have been the same as if it had been an original part of its charter. Although charters are vested rights, and cannot be altered at the will of the legislature, they may be altered by the consent of the corporators. A reservation by the legislature of a right to repeal and forfeit a charter, is not unconstitutional : the inquiry by the legislature into the affairs of the corporation, with a view to forfeit its charter, is not a judicial act.—Read v. Frankfort Bank, 10 Shepley's (Maine) R. 318 ; Miners' Bank v. The United States, 1 Iowa, 553 ; Crease v. Babcock, 23 Pick. 335 ; McLaren v. Pennington, 1 Paige, 107 ; The State v. Baltimore & Ohio Railroad Co., 12 Gill & J. 399; Revere

v. Boston Copper Co., 15 Pick. 360. But even if this act be unconstitutional, the company's consent to its provisions being a condition precedent to the extension of its loan, the right to renew does not arise until the condition is performed. Authorities cited in preceding paragraph.

WALKER, J.—It is contended for the railroad company, that by an act of 12th January, 1856, a renewal of the loan was authorized, and that it has done all that was necessary to entitle it to a renewal of the loan under that act. On the other side it is contended, that by an act passed on the 14th February, 1856, other conditions precedent to the loan were prescribed, with which the company does not in its bill show an offer or a willingness to comply. This position of the State is met by the argument, 1st, that the act of 14th February, 1856, having been passed at the same session of the legislature with that of 12th January, 1856, cannot alter or repeal it ; 2d, that the application of the Mobile and Ohio Railroad Company for the renewal of the loan to it is not included in the act of 14th February, 1856 ; 3d, that the act of 14th February, 1856, requires from the company a consent that the legislature may do that which it cannot do without violating the constitution.

Some of the works on English law say, in general terms, that " an act cannot be altered or repealed in the same session in which it is passed, unless there be a clause inserted expressly reserving a power to do so."—14 Petersdorff's Abridgment, "statute," 91, p. 720 ; Dwarris on Statutes, 673. And such was, at one time, the law in reference to acts of the British parliament ; but the doctrine resulted from the fact, that the royal assent bore no date, and the order of the approval of the laws adopted at a given session of parliament was not known, and they were all alike regarded as having received the royal assent on the first day of the session. Afterwards, by the statute of 33d George III, ch. 13, it was provided, that the date of the approval should be endorsed, and should be the commencement of the law where no other was prescribed. After the adoption of this last act, it was held, that a subsequent might repeal a former law of the same session of parliament. In this country, where laws are of

force from their actual adoption unless otherwise directed, the old English rule has been repudiated. Upon the principle that the latest expression of the legislative intention must control, a repugnant proviso to an act may repeal it; and upon the same principle, an act may be repealed by a subsequent one at the same session. The regulations of the parliamentary law, as to the entertainment of propositions to alter or repeal acts or resolutions during the session of their adoption, are rules of legislative conduct, and not of judicial action. It appears, however, that even the parliamentary law does not absolutely exclude all propositions for the alteration of previously adopted acts of the same session.— King v. Justices of Middlesex, 2 B. & A. 818, (22 E. C. L. 190) ; Panter v. Turner, 6 Brown's Par. Cases, 553 ; Spencer v. The State, 5 Ind. 41 ; The Brig Ann, Tenny, claimant, Gallison's R. 62; Peyton v. Moseley, 3 Kentucky, (T. B. Monroe,) 77 ; Goodsell v. Boynton, 1 Scam. 555 ; Jefferson's Manual of Parliamentary Practice, 93-94.

We follow up the conclusion that it was competent for the legislature, at the same session, to alter, modify or repeal a law by a subsequent act at the same session, with the examination of the second position taken for the railroad company, that the act of 14th February, 1856, does not embrace its application for a renewal of the loan, and therefore does not alter the act of 12th January, 1856, under which the application is made. The act of 12th January *authorizes* and *directs* the governor to renew the loan of four hundred thousand dollars, taking " the first mortgage bonds of said company, or such personal securities, or both, as heretofore required, as satisfactory to him, for the payment of the principal and interest of said loan ; *provided, that the debt shall not be extended, unless the governor is satisfied that the debt is made perfectly safe to the State ;* and provided further, that the governor be directed to require not only the first mortgage bonds, to at least the amount of the loan, but also such personal security as he shall deem satisfactory ; said personal security not to be less than fifty per cent. of the amount of the loan." The act of 14th Feb. is as follows : (see preceding statement of facts.)

The question here is, not whether the former of the two foregoing acts is repealed by the latter, but whether the latter

superadds the conditions mentioned in it to the conditions upon which the renewal of the loan was directed by the former. We do not controvert the proposition, that special provisions are not repealed by general provisions upon the same subject. The maxim of the law is, " *generalia specialibus non derogant*." The act of 12th January, 1856, is a special one, contemplating the renewal of a loan to the Mobile and Ohio Railroad Company, upon certain conditions therein named ; and the principle above stated exacts the concession in this discussion, that no general law, subsequently enacted, can be construed to add other conditions to those required by the special law, unless the latter law clearly manifests upon its face an intention to add such new conditions, and thus specially aims at a modification of the former law by a cumulation of conditions. By recurring to the first section of the act of 14th February, 1856, it will be seen that it includes only loans made, or that might be made, and does not by its terms include renewals of loans. The second section, however, expressly prescribes that, " *before extending any loan by virtue of the provisions of the act under which application is made for a loan or extension*," the company must file its consent to, and acceptance of the provisions of the act. It is thus, in effect, required that, if a company make application for the extension of a loan by virtue of the provisions of some other act, it must consent to the terms and conditions of the act under consideration. The statute thus points, with a directness and clearness which we cannot disregard without ignoring its words, to the application of the Mobile and Ohio Railroad Company, for a renewal of its loan by virtue of the provisions of the act of 12th January, 1856, and says that when an application is made for a renewal under that act, this act of 14th February, 1856, must be complied with. Otherwise, the words of the statute which we have last noticed have no meaning ; for it might be contended, in every instance of an application for the renewal of a loan under the provisions of an act of the legislature, that the provisions of the particular statute could not be controlled by the general law. We draw no distinction between the import of the word "renewal" and of the word " extension" used in the two statutes. We think that, as here used, they are synonymous.

Two reasons are urged in support of the position, that the act of 14th February, 1856, requires a consent to the exercise of unconstitutional powers by the legislature. Those reasons are, that the legislature would, in declaring the charter forfeited, exercise judicial power ; and that the forfeiture of the charter, in a contingency stipulated between the corporation and the State, and not recognized by the law as it previously existed, would interfere with the vested rights of its creditors and others who had acted upon the faith that the charter and the subsisting law afforded the measure of its powers and liabilities. The consent, which the corporation is required to make, is threefold : that the charter should be forfeited upon default of payment; that the general assembly might declare it forfeited ; and that the forfeiture so declared should be complete and effectual for all purposes without any judicial proceedings for that purpose. The last two items in the required consent fall within the purview of the objection as to the exercise of judicial power by the legislature ; the first does not. The consent that, in a certain contingency, the charter should be forfeited, does not of itself contemplate any subsequent legislative action. If some of the provisions of a statute violate the constitution, while others are consistent with it, the latter will be maintained, if they can be separated from and stand without the unconstitutional and void parts of the law. The courts will treat the unconstitutional parts as if they were stricken out of the statute.—Campbell v. The Miss. Union Bank, 6 Howard's Miss. R. 677 ; Bank of Hamilton v. Dudley's Lessee, 2 Peters, 526 ; Clark v. Ellis; 2 Blackford's R. 8 ; Sturges v. Crowninshield, 4 Wheaton, 122 ; Ely v. Thompson, 3 A. K. Marshall, 70.

The requisition, that the corporation should consent that its charter should be forfeited by a failure to pay, may stand, and may be performed, independently of, and separately from, the requisition of its consent that the forfeiture may be declared by the legislature, and that the forfeiture so declared should "be complete and effectual for all purposes without any judicial proceeding for that purpose." If the constitution is not violated in requiring the corporation to consent that its charter shall be forfeited upon a failure to pay, there is no equity in the complainant's bill ; because it does not appear

that the corporation has either offered to comply, or is willing to comply, with that requisition. If a compliance with the law in that particular be a necessary condition precedent to the renewal of the loan, it would be most unreasonable for the chancery court to enjoin proceedings under the mortgage, without knowing that the corporation would or could, or was even willing to consent to a forfeiture of its charter upon a failure to pay. The bill does not disclose either an offer or an expression of a readiness or willingness to consent that the charter shall be forfeited by a default in the repayment of the loan. It is unnecessary, therefore, for us to consider the question, whether the legislature could constitutionally declare a forfeiture complete and effectual for all purposes without any judicial proceeding, if there is no violation of the constitution involved in the requirement of its consent to a forfeiture of its charter for a default in the repayment of the money loaned. We therefore waive the consideration of the question of the constitutional power of the legislature to declare the forfeiture, and content ourselves with a citation of the authorities which affect it.—Crease v. Babcock, 23 Pick. 335 ; Campbell v. Miss. Union Bank, 6 How. 661 ; Wild's Lessee v. Sheppell, 10 Grattan, 405 ; Ang. & Ames on Cor. 891, § 778 ; Canal Company v. Railroad Company, 4 Gill & J. 722 ; Miners' Bank of Dubuque, 1 Morris, (Iowa,) 482.; State v. Curran, 7 Eng. (Ark.) 321 ; People v. Manhattan Co., 9 Wend. 351 ; Read v. Frankfort Bank, 23 Maine, 318.

We cannot assent to the proposition, that the declaring a charter forfeited, in pursuance to a law accepted by the corporation, violates the constitution by impairing the obligation of contracts. The legislature may repeal the charter of a public corporation ; and it has never been supposed that, by so doing, the constitution is violated. This repeal may be for causes existing after liabilities were incurred, or it may be without any sufficient cause ; and yet the effect of the repeal and of a forfeiture are the same, so far as the rights of creditors are concerned. The charter of a corporation may be made liable to repeal by the legislature, by an amendment accepted by the corporation, which reserves the power, notwithstanding the charter was before irrepealable.—Monongahela Navigation Co. v. Coon, 6 Penn. State R. (Barr,)

38

379. The legislature may repeal the charter of a private corporation, provided it assent to such repeal; and the corporation may voluntarily make a surrender of its charter, which will certainly, if accepted by the legislature, terminate the corporate existence.—Angell & Ames on Corporations, §§ 772–773.

It is clear, both upon reason and authority, that the dissolution of a corporation, in any of the modes above stated, does not infringe the constitutional provision designed to preserve and protect the obligation of contracts, notwithstanding it may deprive creditors of all opportunity to collect their debts. The consistency with the constitution of a dissolution by such means is maintained upon the idea, that all persons deal with the corporation in reference to, and in contemplation of its liability to dissolution by those agencies. The effect upon creditors of an accepted surrender of a charter, and the effect of a forfeiture of a charter, are identical; and therefore a discrimination between the constitutional capacity of a corporation to assent to a surrender of its charter, and to assent to a forfeiture in a given contingency, is not supported by any good reason. As a corporation has the power to consent that its charter may be forfeited upon a certain default, persons must be regarded as having contracted upon the hypothesis of the existence and of the possible exercise of that power. It can make no difference, that those dealing with it could not foresee, that the consent to a forfeiture would be called forth by a statutory requirement of that consent, as a condition precedent to the renewal of a loan. To avoid the constitutional objection, it is sufficient that contracts may be deemed to have been made in *anticipation* that the power to give the consent might be exercised, and it is not necessary that the contingency in which the power is exercised should have been anticipated. If it were, there could probably never be a repeal or surrender of the charter of a corporation, without a violation of the constitution. In support of the views above expressed, we cite the following authorities:—Paschall v. Whitsett, 11 Ala. 472; Mumma v. Potomac Company, 8 Peters, 281; Revere v. Boston Copper Company, 15 Pick. 351; Enfield Toll Bridge v. Conn. River Co., 7 Conn. 28.

The authorities do not sustain the proposition, that there

is no power in a corporation to consent to a destruction of the corporate life by forfeiture or surrender. It may be, that such a consent could not be given by a majority of the corporators, and the authorities seem to go to that extent.—New Orleans, Jackson and Great Northern Railroad Co. v. Harris, 5 Miss. (Cushman,) 517 ; Ward v. Society of Attorneys, 28 Eng. Chan. (1 Collier,) 370 ; Angell & Ames on Cor. § 772. If it be conceded that the corporation could only give its consent to the forfeiture of its charter upon the default in the repayment of the loan, upon the authority of all the stockholders, it is only shown that the difficulties of complying with the act are very great. The unconstitutionality of the law is not a consequence of the magnitude of the difficulty in complying with the condition which it imposes.

We do not decide that the act of 12th January could be repealed or altered by an unconstitutional act, or that the railroad company could be required, as a condition upon which it should receive the benefit of that *law*, to consent that the legislature should do a thing beyond its constitutional power. But the act of 12th January, while it became a law upon its passage over the executive veto, could not become a *contract*, until it was accepted by the railroad company. The bill does not aver, and we cannot presume in favor of it, that the company accepted or acceded to the propositions of the act of 12th January, before the passage of the act of 14th February. The law of 12th January not having become a contract, it was competent for the legislature to have repealed the law, and thus withdrawn the proposal made by it, or to have modified it, by superadding conditions, even though those conditions may have involved insuperable difficulties, and therefore amounted to a denial of the renewal of the loan. The attitude of the State cannot be distinguished from that of an individual, who has proposed a loan, and, prior to the acceptance of the propositions, imposes conditions of great, or even insuperable difficulty.

We deem it proper to observe, that although our judgments are fully convinced of the correctness of the conclusions which we have attained, we have been compelled to prepare the opinion in this case with more haste than is desirable. This results from the fact, that the Code (§ 2984,) directs that

appeals from decrees dissolving injunctions shall be heard and determined at the first term after the appeal is taken ; and the case was submitted to us only a few days before the adjournment of the court.

The decree of the chancery court is affirmed.